John H. Howe, Respondent, *v.* Juliette Bell et al., as
Executors, etc., Appellants.

Juliette Bell et al., as Executors, etc., et al., Appellants, *v.*
John H. Howe, Respondent.

In 1853 N., who was the owner of a tract of land in the city of R., laid
out the same into lots and streets and caused a map thereof to be made
and filed. This map showed lot No. 20 to be ninety feet front on
one of the streets. Lot No. 4 as laid out on the map fronted on the
same street and adjoined lot 20 on the north. A. sold and conveyed lot 4.
In the deed the south line thereof was described as the north line of lot
No. 20. After such conveyance A. filed a second map, on which was laid
out an alley fifteen feet wide on the northerly side of lot 20, which con-
nected with another alley, and on the same day recorded an instrument
stating that said alleys were for the use of certain lots specified, not includ-
ing lot 4. Lot 20 was subsequently conveyed by deed referring to the
second map. In an action of ejectment brought by the owner of lot
20 against the owners of lot 4, to recover possession of the alley, *held,*
that the legal effect of the instrument of dedication was simply to impose
an easement on lot 20 for the benefit of the lots named; that lot 4 was
not included in said benefits, and its owner had no right to the use of the
alley; that the purchaser of lot 20 took title to the lot as originally laid
out, subject simply to said easement, and so that his successor in title was
entitled to maintain the action.

A. was dead at the time of the trial; his son was called as a witness, and
testified that the maps were made and filed in the order above stated.
His evidence was objected to as incompetent under the provision of
the Code of Civil Procedure (§ 829) on the ground that the father of the
witness was the common grantor of the parties. *Held,* untenable, as
the owners of lot 4 took no title from A. of the land in dispute.

(Argued June 12, 1894; decided October 9, 1894.)

Appeal from judgments of the General Term of the
Supreme Court in the fifth judicial department, entered upon
orders made June 23, 1892, one of which affirmed a judgment
in favor of the plaintiff in the first above-entitled action and
the other affirmed a judgment in favor of the defendant in
the second above-entitled action, both of which judgments
were entered upon reports of referees.

The first above-entitled action was one of ejectment.

The second action was brought to restrain the defendant

from entering upon the land described in the complaint and committing irreparable injury.

Both actions related to the same premises.

The facts, so far as material, are stated in the opinion.

*John Van Voorhis* for appellants in first above-entitled case. The complaint alleges that the plaintiff is the owner in fee of the land in controversy and entitled to the possession. The referee so found and the judgment so decides. It is not an action to recover an easement. Ejectment will not lie for that. (*Child* v. *Chappell*, 9 N. Y. 246 ; *Ogden* v. *Jennings*, 62 id. 526 ; *Language* v. *Anderson*, 101 id. 625 ; *Griffiths* v. *Morrison*, 106 id. 165.) Alley B, as laid down on map 2, is not and was never intended to be a public street, but only a private easement. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 180 ; *Bissell* v. *N. Y. C. R. R. Co.*, 23 id. 64 ; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120 ; *Bakeman* v. *Talbot*, 31 id. 366 ; *Brill* v. *Brill*, 108 id. 511.) The easement was extinguished by act of all the interested parties. (*Pope* v. *O'Hara*, 48 N. Y. 456 ; *Morse* v. *Copeland*, 2 Gray, 302 ; *Dyer* v. *Sandford*, 9 Metc. 395 ; *Winter* v. *Brockville*, 8 East, 308 ; *Volger* v. *Geiss*, 51 Md. 407 ; *Hamilton* v. *Farrar*, 128 Mass. 492 ; *King* v. *Murphy*, 140 id. 254 ; *Cartwright* v. *Mapleson*, 53 N. Y. 622 ; *Taylor* v. *Hampton*, 4 McCord, 61, 96 ; *Steere* v. *Tiffany*, 18 R. I. 568 ; *Snell* v. *Levet*, 110 N. Y. 595 ; *Corning* v. *Gould*, 16 Wend. 531.) Alfred Bell and his grantors had possession of the land in question, claiming title thereto, for a period of more than twenty years prior to the commencement of this action. The defense is raised by the answer. It is something more than the Statute of Limitations. (*Baker* v. *Oakwood*, 123 N. Y. 16 ; Code Civ. Pro. §§ 365, 371 ; *Thompson* v. *Burnhanes*, 79 N. Y. 93.) The referee erred in rejecting testimony offered by Alfred Bell. (*Jackson* v. *Vredenberg*, 1 Johns. 159 ; *Morse* v. *Jacobs*, 35 How. Pr. 90 ; *Edwinston* v. *Edwinston*, 13 Hun, 133 ; *Hardenburg* v. *Quary*, 50 Barb. 32 ; *Parsons* v. *Brown*, 15 id. 590 ; *Van Rensselear* v. *Vickery*,

3 Lans. 57; *Ham* v. *Van Orden*, 84 N. Y. 271.) All the conveyances of the land in question, since September, 1870, the time Alfred Bell went into possession, are void under the statute. (1 R. S. 737, § 147; 3 id. [7th ed.] 2169; *Smith* v. *Long*, 12 Abb. [N. C.] 113; *Palmer* v. *Morrison*, 104 N. Y. 137; *Chamberlin* v. *Taylor*, 105 id. 185; *Sands* v. *Hughes*, 53 id. 287; *Dawley* v. *Brown*, 79 id. 360; *Van Voorhis* v. *Kelley*, 31 Hun, 293; *Church* v. *Schoonmaker*, 42 id. 528; *Abrams* v. *Rhoner*, 44 id. 507; *Snyder* v. *Church*, 53 N. Y. S. R. 674.) The north line of lot 20 has been located ever since said map Exhibit 2 was made, July 28, 1853. As located it is the south line of the alley in dispute. (*George* v. *Toll*, 39 How. Pr. 497; *Ham* v. *Van Orden*, 84 N. Y. 271.) The referee erred in finding as a fact that the use made by the defendant Bell, of the lands in controversy, during the lifetime of Amos Wilmot, was consistent with the claim on the part of said Bell, of an easement only in such lands as an alley or passageway appurtenant to said lot No. 4. The erroneous character of this finding is apparent. (*Doolittle* v. *Tice*, 41 Barb. 181; *Barnes* v. *Light*, 116 N. Y. 34; *Landes* v. *Brandt*, 10 How. [U. S.] 348; *Hughes* v. *U. S.*, 4 Wall. 232; *Bradstreet* v. *Huntington*, 5 Pet. 402.)

*Nathaniel Foote* for respondent in first above-entitled case.

*John Van Voorhis* for appellants in second above-entitled case.

*Nathaniel Foote* for respondent in second above-entitled case. The use of the alley by either Mr. or Mrs. Van Epps was never such as to initiate a claim of title in fee adverse to the true owner. (Code Civ. Pro. §§ 368, 369, 371; *Bliss* v. *Johnson*, 94 N. Y. 235.) The use made of the alley by Van Epps was as an alley and not otherwise. (*Wilsh* v. *Taylor*, 50 Hun, 137.) The use of the alley by Mr. Bell has not been such as to constitute adverse possession. (*Village of Olean* v. *Steyner*, 135 N. Y. 341; *Miller* v. *L. I. R. R. Co.*, 71 id. 380.) The fee to the land in the so-called alley passed to the .

grantees of lot No. 20, under the several conveyances of that lot by its number and by reference to the map and allotment of the tract. (*Bissell* v. *N. Y. C. & H. R. R. R. Co.*, 23 N. Y. 61; *Haberman* v. *Baker*, 128 id. 253; *Hennessey* v. *Murdock*, 137 id. 317.) If the fee to the land in the alley did not pass under the several conveyances of lot No. 20 by its number, then it did pass under the general assignment made by William E. Arnold, and became vested in the defendant Howe by the chain of the title from Arnold's assignee as a separate property. (*Perrin* v. *N. Y. C. R. R. Co.*, 36 N. Y. 120; *Haberman* v. *Baker*, 128 id. 253.) None of the deeds in Howe's chain of the title are void for champerty. (*Dougherty* v. *Matsell*, 119 N. Y. 646; *Danziger* v. *Boyd*, 120 id. 628.) At the commencement of this action Mr. Howe had both title to and possession of the lands in controversy. (*Bliss* v. *Johnson*, 94 N. Y. 235.) The rulings of the referee upon the reception and rejection of evidence were correct, and none of the exceptions to such rulings were well taken. (Code Civ. Pro. § 829; *Nicolay* v. *Unger*, 80 N. Y. 54.) The exceptions by plaintiff's counsel to the findings of fact and conclusions of law made by the referee in his report, and to the rulings of the referee upon the requests for findings of fact and conclusions of law submitted by plaintiff's counsel, are none of them well taken. (*Outwater* v. *Moor*, 124 N. Y. 66.)

Bartlett, J. The executors and widow of Alfred Bell, deceased, are the appellants in two actions, which were argued together in this court. The object of these litigations is to determine the title to an alley fifteen feet in width and about one hundred and sixty feet in depth, lying between the residence of the late Alfred Bell and the residence of Joseph H. Howe, in the city of Rochester.

In September, 1889, Bell brought an action against Howe to restrain defendant from trespassing on the disputed land. In July, 1890, Howe sued Bell in ejectment to recover the premises in question. Both cases were referred and tried

together, and resulted in a judgment dismissing the complaint in Bell against Howe, and a judgment for the plaintiff in Howe against Bell. Appeals were taken and the General Term affirmed both judgments. Pending these appeals, Alfred Bell died, and his executors and widow were duly substituted in each action as parties.

In affirming the judgments below, we might well rest satisfied with the opinion of the learned General Term, but, in view of the elaborate briefs and arguments of counsel, we will briefly consider the controlling points in this controversy. Alfred Bell sought to establish a paper title to the disputed strip of land, and, failing in that, he insisted that he and his grantors had been in adverse possession for more than twenty years. The finding of the referee that Bell and his grantors did not occupy the disputed strip adversely for more than twenty years is sustained by the evidence and is binding upon this court. It follows, therefore, that unless Bell established a paper title the judgments below must be affirmed. The material facts are as follows, viz. : In May, 1853, one William E. Arnold became the owner of a tract of land in the city of Rochester, subsequently designated by him as the "Arnold Tract," which included the land in controversy and the premises of the two litigants. This tract was bounded on the west by Meigs street ;. on the north by East avenue, and on the east by Goodman street. Bell's premises are located at the southwest corner of East avenue and Goodman street, and Howe's premises front on Goodman street and adjoin Bell's land on the south. The disputed land lies between these two properties. On or about the 28th of July, 1853, Arnold caused to be made and filed in the Monroe county clerk's office a map of his tract, above referred to, showing his subdivision thereof into lots and the location and dimensions of each lot. This map is in evidence and shows Bell's premises as lot No. 4 and Howe's premises as lot No. 20. This map is dated July 28th, 1853, and must have been filed before August 1st, 1853, as Arnold conveyed on the latter day lot No. 4 on said map to George C. Buell and referred to the map as on file. The

south line of lot No. 4 was described as the north line of lot
No. 20. The map shows lot No. 20 to be ninety feet front
on Goodman street, which includes therein the disputed strip,
for if Bell's claim were allowed lot No. 20 would be only
seventy-five feet on Goodman street. It is, therefore, abso-
lutely certain that Arnold's deed to Buell of lot No. 4 con-
veyed no portion of the disputed strip. On the 28th of Sep-
tember, 1853, Arnold made and filed a second map upon
which he indicated the alley in question across lot No. 20 on
the northerly side thereof from Goodman street to its rear
and fifteen feet in width, and also an alley across the rear of
lot No. 20, and of other lots fronting on Goodman street and
connecting with the alley on the north side of lot No. 20.
On the same day Arnold recorded an instrument under his
hand and seal in which he declared, among other things, that the
passageway indicated upon the map represented an alley for
the use of the owners of certain lots specified, lot No. 20 being
named, but lot No. 4 was omitted, as Arnold had already sold
it to Buell. This deed of dedication is significant in three
aspects : It shows that the laying out of the alley on the
second map was a mere easement for the benefit of lots desig-
nated therein ; that lot No. 4 was excluded from said benefits
as it was no longer owned by Arnold, and that the first map
filed in July, 1853, was the basis of the second map and recog-
nized the location and dimensions of the lots laid out thereon.
In 1865 the title of Buell by mesne conveyances became vested
in Sarah H. Van Epps, the immedate grantor of Bell, by the
description that Arnold conveyed to Buell. In 1870 Sarah H.
Van Epps and husband conveyed lot No. 4 to Alfred Bell by
warranty deed, and on the same day they executed and deliv-
ered to Bell a quit-claim deed of the alley or strip in question.

This constitutes the paper title of Alfred Bell. These rec-
ord facts show conclusively that Alfred Bell had no legal title
to the land in dispute, and that his quit-claim deed from Mrs.
Van Epps was mere waste paper  The fact that she did not
include the alley in her warranty deed is most significant.

The title of John H. Howe to lot No. 20 is fully established.

It is clear that the legal effect of Arnold's deed of dedication was to impose only an easement on lot No. 20, and did not reduce or change its original frontage of ninety feet on Goodman street. At the time Arnold laid out his tract in question lot No. 20, with others, was subject to a mortgage subsequently foreclosed, and on the 28th of December, 1859, the referee deeded lot No. 20, by reference to the second map, the legal effect being to convey this lot with ninety feet frontage on Goodman street. What effect this conveyance had on the easement sought to be created by Arnold it is not necessary to determine at this time, as the legal representatives of Bell and his widow have no interest in the matter.

This foreclosure title, by several mesne conveyances, was vested in Howe April 16th, 1889. In October, 1857, Arnold made a general assignment for the benefit of his creditors, and Howe, by mesne conveyances, became vested April 16th, 1889, with any title Arnold may have had in lot No. 20 at the time of his general assignment. It is clear that Howe's title through the foreclosure proceedings was perfect, and that the equity of redemption, if it passed to Arnold's assignees, was cut off. The fundamental error in the argument urged to sustain the Bell title is in assuming and insisting that the second map (exhibit 2), showing the alley already referred to, changed the line between lots No. 4 and No. 20, was in existence on August 1st, 1853, and was referred to by Arnold in his deed of that date to Buell conveying lot No. 4. An examination of the two maps in connection with Arnold's dedication deed of Sept. 28th, 1853, demonstrates that the only map on file August 1st, 1853, was exhibit 13 in this case, which fixed the frontage of lot No. 20 on Goodman street as ninety feet. The fact that the second map, laying out the the alley, puts the frontage of lot No. 20 at seventy-five feet and that of the alley at fifteen feet is of no importance, as it was a mere mode employed to express the width of the strip over which the easement was created. The mortgage on lot No. 20 covered the entire frontage of ninety feet, and that title is vested by the foreclosure in Joseph H. Howe.

Having established the existence of the maps in the order pointed out, the argument in support of Bell's paper title falls to the ground. The evidence furnished by the maps and dedication deed of William E. Arnold was supplemented by the evidence of William E. Arnold's son, Hobart G. Arnold, the former being dead at the time of the trial. This witness swore that the maps were made and filed in the order as above indicated. This evidence was objected to as incompetent, under section 829 of the Code of Civil Procedure, on the ground that the father of the witness was the common grantor of Bell and Howe. The facts already discussed establish that Bell took no title from Arnold of the land in dispute. The exceptions to the findings of the referee are disposed of by the views we have expressed, and the further fact that the findings against adverse possession are sustained by the evidence. Many of the exceptions to the admission and rejection of evidence are rendered immaterial for the same reasons.

A large number of questions were asked Bell that called for his conclusions. The referee repeatedly ruled that witness was at liberty to state the facts. We find no reversible error in his examination. There are no other exceptions in the case requiring special mention.

The judgments should be affirmed, with costs.

All concur, except ANDREWS, Ch. J., not sitting.

Judgments affirmed.